SHIELDS, J.
The relator instituted a proceeding in mandamus to compel the city auditor of the city of Zanesville, Ohio, to issue his warrant upon the treasurer of said city in favor of the relator for the sum of $40.62, in payment of what he claims to be his salary due him as a member for the municipal civil service commission of said city at the time of the commencement of said proceeding.
In an answer filed the defendant, as said city auditor, denies that the relator is entitled to said sum of $40.62 as salary as a member of said commission as in his said petition stated, and he denies that said relator is entitled to receive a salary in excess of: the sum of $25 per annum as said commissioner for the reasons therein stated.
The sufficiency of the above answer was challenged by a demurrer filed thereto by the relator, which demurrer was by the court below overruled and judgment was thereupon rendered in favor of the defendant. Error proceedings are prosecuted to this court to reverse said judgment of the court of common pleas.
It appears that the relator, on August 24,1916, was duly appointed by the mayor of said city as a member of said commission to fill a vacancy caused by the resignation of one James M. Bailey, who on November 19, 1915, had been appointed as a member of said commission for the term of six years; that the *256 relator thereupon qualified and has since continued to act as a member of such commission; that the salary of the members of said commission was originally fixed by an ordinance of said city at $25 per annum, which said ordinance on the-day of July, 1916, was repealed and another ordinance of said city of that date Avas passed fixing the annual salary of the members of said commission at $150 per annum, which said latter ordinance took effect February 16, 1916.
The question raised by said demurrer is whether the salary of the relator is controlled by the provisions of said- city ordinance passed and which-became effective prior to his appointment and qualification as a member of said commission, or is such salary controlled by the provisions of said city ordinance in effect at the time of his predecessor’s appointment and resignation as a member of said commission.
Acting under constitutional authority, the legislature of this state enacted Sec. 4213 G-. C., Avhieh provides that:
“The salary of any officer, clerk or employee shall not bo increased or diminished during the term for which he was elected or appointed.”
In the investigation made we have failed to find that the question here made has been passed upon by the courts of this state, although it appears to have been the subject of judicial action by the courts in some other states, not, hoAA^ever, with unvarying unanimity of vieAv and decision, to Avhieh Ave.will refer later on.
At the outset we deem it unnecessary to say, in view of the constitutional provision that there shall be no change in “the salary of any officer during his existing term,” that the relator would not be entitled to any increase in salary under any legislation passed after his appointment nor during the term for which he was appointed, nor that his appointment made under favor of Sec. 486-19 was not for the unexpired term of said Bailey, as urged on behalf of the defendant in error. But as already stated, this is not the question made here. The question to be met here arises under a proper .interpretation to be given the terms employed in said sect-io» of the statute. It is unnecessary to remark that the-intent and meaning of a statute are *257 to be ascertained by the language employed therein, and if such language is plain and unambiguous and such statute is within the constitutional authority of the law-making power, the plain duty of the courts is to enforce it according to its terms. All the authorities seem to agree that the constitutional and statutory inhibition against a change in the compensation of an officer during his incumbency of an office is founded upon considerations of public policy in guarding and protecting the public against a possible combination of office-holding interests and log-rolling legislatures in an effort to raise their salaries. With the limitation of power laid upon the law-making body as if to prevent such influences and abuses, it would seem that the legislature in framing this law had in mind the incumbent of the office rather than the office itself; for, among other things, the statute declares that “the salary of any officer * * * shall not be increased * * * during the term for which he was elected or appointed.” What does “during the term for which he was elected or appointed” refer to ? Does it refer to the full term of office for which a person is elected or appointed, or to the officer ? Does it refer to the time of the incumbency of the office, or to the incumbent of the office ? If to the former, in either instance, then “during the term” is to be treated as an unbroken and indivisible unit, without reference to an intervening vacancy in the office by death, disability, resignation or otherwise, and without reference to the number of incumbents of the official term. Is this the correct interpretation to be given the statute referred to? As stated, we have found no case directly in point decided by the courts of this state, except the reference made in State v. Raine, 49 Ohio St. 580 [31 N. E. 741], wherein the court say:
“A statute, whatever terms it may employ, the only effect of which is to increase the salary attached to a public office, contravenes Sec. 20 of Art. II of the Constitution of this state, in so far as it may affect the salary of an incumbent of the office during the term he was serving when the statute was enacted.”
But the same question involved in the case before us has been directly passed upon by courts in some other states, as before *258 stated, and among them is the case of Board of Freeholders of Atlantic Co. v. Lee, 76 N. J. L. 327 [70 Atl. 925], which was an action in mandamus to compel the county clerk to pay over certain fees, etc.,- received by him for services rendered as such clerk. It appears that one Lee was appointed county clerk in December, 1907, to fill a vacancy in said office caused by the death of one Scott in November, 1907, who had been elected to said office in November, 1905, for the constitutional period of five years from that date. Notwithstanding Scott’s death, it was claimed by Lee that Scott’s term of office did not expire until December, 1910. Reed, Judge, speaking for the court in this case, says:
“The words ‘term of office’ may, in a sense, be used to indicate the statutory period for which an officer is elected. We speak of the term of office of the President of the United States; the term of office of the governor of the state, meaning that the first was four years and the latter three years; but the words ‘term of office’ may also mean a period much shorter than that for which the particular officer was elected. His term of office may be terminated before the expiration of the statutory period for which he was elected by impeachment, or resignation, or death of the particular officer. The happening of these contingencies are implied limitations upon the right of the elected officer to continue in office for the period for which he would otherwise be entitled to hold. "When such a contingency occurs the officer’s term expires; there is a vacancy, and upon the appointment or election to fill the vacant office, the term of another officer begins. # * * In view of the purpose of the legislation, there seems to be no question that the words ‘term of office’ was the term during which the then present clerk was entitled to receive compensation for his services. When Mr. Scott died it terminated his official life, and the period of his official life was his term of office. When Mr. Lee was appointed he began a new term, not as legatee of Mr. Scott, but by a distinct appointment to a vacant office. ’ ’
Again, in Gaines v. Horrigan, 72 Tenn. (4 Lea) 607, it is held that:
“The constitutional provision that the salaries of judicial *259 óffieers shall not be diminished or increased during the time for which they were elected does not apply to their term of office, and where a judge is appointed to fill out the unexpired term of a deceased judge he is entitled to compensation fixed by law at the time he assumes the duties of the office. ’ ’
And in Barnum v. Gilman, 27 Minn. 466 [8 N. W. 375; 38 Am. Rep. 304], while a case in quo warranto involving the right and title to an office, Judge Cornell, speaking for the court in said.ease upon the subject of “term of office,” says:
“The clause may very properly be construed to mean ‘ during his term of office, ’ and this may be the full term dux-ing which the office may be held, or such shorter period as the incumbent may consent to hold it. The, term of every elective office, in the absence of any express enactment of law to the contrary, may be terminated at the pleasure of the incumbent by resignation, or by the acceptance of an incompatible office.”
And Timlin, J., in a separate concurring opinion in the decision of the court in the case of State v. Frear, 138 Wis. 536-557 [120 N. W. 216; 16 Ann. Cas. 1019], in speaking of appointments to fill vacancies in public office, says:
“The provision of oiir constitution relating to increase or diminution of salary is not limited to judicial offices,' but includes' all public officers, and appears as a general limitation upon legislative power.' It restricts the power of the legislature with reference to different classes of persons; relates to the officer, not to the office, to his term, not to the term. It is as follows:
‘ ‘ ‘ Section 26. The legislature shall never grant any extra compensation to any public officer * * * nor shall the compensation of any public officer be increased or diminished during his term of office. ’ ]
“I construe this as wholly personal to each of the classes therein mentioned, including the ‘public officer,’ and the expression ‘during his term of office’ accords with this construction. Otherwise the framers of the constitution would have used the expression ‘public office’ instead of ‘public, officer,’ and ‘the term.’ instead of ‘his term.’ * * * I regard the provision as personal to the incumbent of the office. If he enters the office *260 after the change of the salary has taken place he is entitled to, that salary, and as to him it can not be increased or diminished; but if the office is vacated by death or otherwise before the expiration of the term the succeeding incumbent takes, the .office with the salary fixed by the Legislature for that office .and in force at the time of the appointment or election of the succeeding incumbent, even though such appointment or election be for part of an unexpired term. I am strengthened in this view because this construction of the constitution was arrived at by Chief Justice Whiton and by Chief Justice Cole, both of whom took part in framing the constitution, and by Chief Justice Ryan and Justice Paine, and others, in drawing and accepting salaries pursuant to this interpretation. * * * I have no doubt and have had but little difficulty in arriving at the conclusion that the true interpretation of See. 26, Art. 4 of the state constitution is that he who comes into an office lawfully by election or appointment to fill a vacancy caused by the death, disability, resignation, or removal of a different prior incumbent is not under the restrictions as to increase or diminution of salary which bound the prior incumbent, but tabes under the law in force at the time of his appointment or election to fill the vacancy.”
It is said that an opinion is valuable only as it appears to be supported by reason and authority. The opinion last cited appears to rest on the interpretation of a constitutional provision forbidding a change in the salary of an officer during the time for which he was appointed, not unlike the constitutional provision in this state, and it appears to us as being logically sound in principle and in’accord with the letter and spirit of the fundamental law and statute of this state.
We are aware that the question made has been decided pro and con in different jurisdictions, and while the question is not altogether free from doubt, still we are of the opinion that the weight of authority sustains the contention made by the relator herein and the judgment of the court of common pleas is therefore reversed. It follows that the writ may issue as prayed for and it is accordingly so ordered.
Powell and Houck, JJ., concur.